James E. Cecchi
Donald A. Ecklund
CARELLA, BYRNE, CECCHI, OLSTEIN,
  BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ  07068
Telephone:  (973) 994-1700
Facsimile: (973) 994-1744

Local Counsel for Steven Sanfilippo

Lionel Z. Glancy
Robert V. Prongay
Lesley F. Portnoy
Charles H. Linehan
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

Counsel for Steven Sanfilippo

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN SANFILIPPO, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| EDGE THERAPEUTICS, INC., BRIAN A. LEUTHNER, and ANDREW SAIK, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Steven Sanfillipo ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Edge Therapeutics, Inc. ("Edge" or the "Company"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Edge; and (c) review of other publicly available information concerning Edge.

## **NATURE OF THE ACTION AND OVERVIEW**

1.      This is a class action on behalf of all persons and entities that purchased or otherwise acquired Edge common stock between December 29, 2017 and March 27, 2018, inclusive (the "Class Period").  Plaintiff pursues claims under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Edge operates as a clinical-stage biotechnology company, to discover, develop and commercialize hospital-based therapies for the management of acute, life-threatening neurological conditions.

3.      On March 28, 2018, the Company published a press release announcing the discontinuation of the Phase 3 Newton 2 study, stating in relevant part:

> Edge Therapeutics, Inc. (Nasdaq:EDGE) today announced that a pre-specified interim analysis performed on data from the Day 90 visit of the first 210 subjects randomized and treated in the Phase 3 NEWTON 2 study of EG-1962 in adults with aneurysmal subarachnoid hemorrhage (aSAH) demonstrated a low probability of achieving a statistically-significant difference compared to the standard of care in the study's primary endpoint, if the study is fully enrolled.
>
> The independent Data Monitoring Committee (DMC) recommended that the study be stopped based on its conclusion that the study has a low probability of meeting its primary endpoint. Favorable outcome was defined as a score of 6 to 8

on the extended Glasgow Outcome Scale, or GOSE, at Day 90. The DMC also reported that there were no safety concerns attributed to EG-1962.

Based on the DMC recommendation, Edge has decided to discontinue the NEWTON 2 study and has taken steps to notify health authorities and clinical investigators participating in the study. Edge will perform analyses of the cumulative unblinded data from the NEWTON 2 study to better understand the basis for this outcome.

"We are very disappointed that the NEWTON 2 study did not demonstrate evidence of improved outcomes with EG-1962, given the positive findings demonstrated on this measure in our randomized, open-label Phase 1/2 NEWTON study of EG-1962 in a similar patient population," said Brian A. Leuthner, Edge's President and Chief Executive Officer.

"We are grateful for the support and commitment from the participating patients, their families, study investigators and their teams, and the aSAH community," said Dr. R. Loch Macdonald, Edge's Chief Scientific Officer.

4.      On this news the Company's shares fell $14.28 per share, or over 90%, to close at $1.31 per share on March 28, 2018.

5.      Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose: (1) that the Company's lead product candidate EG-1962 would likely fail a futility analysis in connection with the NEWTON 2 study; and, (2) that, as a result of the foregoing, the Company's financial statements and Defendants' statements about Edge's business, operations, and prospects, were materially false and misleading at all relevant times.

6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

9.      Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  A significant portion of Defendants' actions, and the subsequent damages, took place in this Judicial District.  Additionally, Edge's principal executive offices are located within this Judicial District.

10.      In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11.      Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Edge stock during the Class Period and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.      Defendant Edge Therapeutics, Inc. is incorporated in Delaware and its principal executive offices are located in Berkeley Heights, New Jersey.  Edge's common stock trades on the NASDAQ Stock Market (the "NASDAQ") under the symbol "EDGE."

13.     Defendant Brian A. Leuthner ("Leuthner") was the Chairman and Chief Executive Officer ("CEO") of Edge at all relevant times.

14.     Defendant Andrew Saik ("Saik") was the Chief Financial Officer ("CFO") of Edge at all relevant times.

15.     Defendants Leuthner and Saik are collectively referred to hereinafter as the "Individual Defendants."   The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Edge's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.   Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.   Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.   The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### Background

16.     Edge operates as a clinical-stage biotechnology company, to discover, develop and commercialize hospital-based therapies for the management of acute, life-threatening neurological conditions.

**Materially False and Misleading**
**Statements Issued During the Class Period**

17.     On December 29, 2017, the Company published a press release entitled, "**Edge's**

**EG-1962 Phase 3 NEWTON 2 Study Continues as Planned Following Completion of**

**Futility Analysis**," stating in relevant part:

> Edge Therapeutics, Inc. (Nasdaq:EDGE), a clinical-stage biotechnology company developing novel hospital-based therapies for the management of acute, life-threatening conditions, today announced that an independent Data Monitoring Committee (DMC) recommended that the Phase 3 NEWTON 2 study of EG-1962 continue as planned based on the completion of a pre-planned futility analysis. The DMC made this recommendation after evaluating data from the Day 90 follow-up visit of the first 150 patients randomized and treated, as well as the available safety data in the study.

18.     On March 1, 2018, the Company published a press release announcing the full

year 2017 results and updates regarding the NEWTON-2 study, stating in relevant part:

> Edge Therapeutics, Inc. (Nasdaq: EDGE), a clinical-stage biotechnology company developing novel hospital-based therapies for the management of acute, life-threatening conditions, today announced financial results and corporate highlights for the fourth quarter and full-year ended December 31, 2017.
>
> "In 2017, Edge Therapeutics achieved meaningful progress as we continued to develop and seek to commercialize EG-1962 to address the unmet need of patients with aneurysmal subarachnoid hemorrhage (aSAH)," said Brian A. Leuthner, Edge's President and Chief Executive Officer. "Our Phase 3 NEWTON 2 study of EG-1962 is proceeding on track to the interim analysis after completion in December 2017 of the pre-planned futility analysis. In preparation for potential commercialization of EG-1962, we secured a commercial supply agreement with an external manufacturer for EG-1962. In addition, as part of our pre-commercial planning, we continue to gain a better understanding regarding health economic outcomes and the tremendous economic burden of aSAH."
>
> Leuthner continued, "Looking ahead, we are operationally and financially well-positioned to execute our corporate growth strategy, in particular, continuing to advance EG-1962 through achievement of key additional clinical milestones including the NEWTON 2 interim analysis by the end of April, and if the study

continues to full enrollment as planned, top-line results from the full NEWTON 2 study in late 2018. In 2018, we are also focused on expanding our pipeline by conducting additional preclinical development in order to select the next PRECISATM-based development candidate, as well as pursuing external business development opportunities to acquire additional products for our development portfolio."

2017 Key Achievements

Completed the EG-1962 Phase 3 NEWTON 2 Futility Analysis; Study Continues as Planned. In December 2017, Edge announced that an independent Data Monitoring Committee (DMC) recommended that the Phase 3 NEWTON 2 study of EG-1962 continue as planned based on the completion of a pre-planned futility analysis. The DMC made this recommendation after evaluating data from the Day 90 follow-up visit of the first 150 patients randomized and treated, as well as the available safety data in the study.

19.     On March 1, 2018, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended December 31, 2017, reiterating the statements provided above regarding the NEWTON 2 Study.

20.     The above statements identified in ¶¶17-19 were materially false and/or misleading when made because Defendants failed to disclose: (1) that the Company's lead product candidate EG-1962 would likely fail a futility analysis in connection with the NEWTON 2 study; and, (2) that, as a result of the foregoing, the Company's financial statements and Defendants' statements about Edge's business, operations, and prospects, were materially false and misleading at all relevant times.

**Disclosures at the End of the Class Period**

21.     On March 28, 2018, the Company published a press release announcing the discontinuation of the Phase 3 Newton 2 study, stating in relevant part:

Edge Therapeutics, Inc. (Nasdaq:EDGE) today announced that a pre-specified interim analysis performed on data from the Day 90 visit of the first 210 subjects randomized and treated in the Phase 3 NEWTON 2 study of EG-1962 in adults with aneurysmal subarachnoid hemorrhage (aSAH) demonstrated a low

probability of achieving a statistically-significant difference compared to the standard of care in the study's primary endpoint, if the study is fully enrolled.

The independent Data Monitoring Committee (DMC) recommended that the study be stopped based on its conclusion that the study has a low probability of meeting its primary endpoint. Favorable outcome was defined as a score of 6 to 8 on the extended Glasgow Outcome Scale, or GOSE, at Day 90. The DMC also reported that there were no safety concerns attributed to EG-1962.

Based on the DMC recommendation, Edge has decided to discontinue the NEWTON 2 study and has taken steps to notify health authorities and clinical investigators participating in the study. Edge will perform analyses of the cumulative unblinded data from the NEWTON 2 study to better understand the basis for this outcome.

"We are very disappointed that the NEWTON 2 study did not demonstrate evidence of improved outcomes with EG-1962, given the positive findings demonstrated on this measure in our randomized, open-label Phase 1/2 NEWTON study of EG-1962 in a similar patient population," said Brian A. Leuthner, Edge's President and Chief Executive Officer.

"We are grateful for the support and commitment from the participating patients, their families, study investigators and their teams, and the aSAH community," said Dr. R. Loch Macdonald, Edge's Chief Scientific Officer.

22.    In a follow-up conference call with analysts and investors to discuss the discontinuation of the NEWTON 2 Study, analysts questioned whether the Company had insight into the futility of the study earlier than March 27, 2018:

<Q - Martin Auster>: Hey guys, thanks for taking the question and obviously disappointed in the results, as I'm sure you are. Curious as to what the company had learned from the futility analysis that was previously conducted and announced in late December. I'm just curious kind of what you learned at that time and if anything kind of changed in terms of the data trends, it's just a short period of time and I assume not too many additional samples are included between then and now, I think it's about 60 patients worth of data. So, I was just curious if you could add a little color on that, I was surprised by the upturn in the study? Thanks.

<A - Brian A. Leuthner>: Yeah. I would say what we learned, you know from a standpoint of futility analysis we followed what the DMC instructed us to do at that time which was to carry on with the study. So.

<Q - Martin Auster>: Yeah. Was there any insight that the separation was minimized, was there any discussion internally about maybe expanding enrollment, or you know those sorts of discussions, I'm just curious on things like that?

<A - Brian A. Leuthner>: Yeah. I mean from our standpoint, the only thing we could do is listen to what their recommendation was and that was to go forward. So, you know that's where we were in – you know we're quite surprised at the results and very disappointed as well.

23.     On this news the Company's shares fell $14.28 per share, or over 90%, to close at $1.31 per share on March 28, 2018.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Edge securities between December 29, 2017 and March 27, 2018, inclusive, seeking to pursue remedies under the Exchange Act; and who were damaged thereby (collectively, the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

25.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Edge's securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Millions of Edge shares were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Edge or its transfer agent and may be notified of the

pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

26.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

27.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

28.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

        (a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

        (b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Edge ; and

        (c)     whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

29.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## <u>UNDISCLOSED ADVERSE FACTS</u>

30.     The market for Edge's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Edge's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Edge's securities relying upon the integrity of the market price of the Company's securities and market information relating to Edge, and have been damaged thereby.

31.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Edge's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about Edge's business, operations, and prospects as alleged herein.

32.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Edge's financial well-being and prospects.   These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.   Defendants' materially false and/or misleading statements during the Class Period

resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

33.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

34.     During the Class Period, Plaintiff and the Class purchased Edge's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

35.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Edge, his/her control over, and/or receipt and/or modification of Edge's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Edge, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

36.     The market for Edge's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Edge's securities traded at artificially inflated prices during the Class Period.   Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Edge's securities and market information relating to Edge, and have been damaged thereby.

37.     During the Class Period, the artificial inflation of Edge's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Edge's business, prospects, and operations.   These material misstatements and/or omissions created an unrealistically positive assessment of Edge and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock.   Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

38.     At all relevant times, the market for Edge's securities was an efficient market for the following reasons, among others:

(a)     Edge stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Edge filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Edge  regularly communicated with public investors *via* established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Edge was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

39.    As a result of the foregoing, the market for Edge's securities promptly digested current information regarding Edge from all publicly available sources and reflected such information in Edge's stock price. Under these circumstances, all purchasers of Edge's securities during the Class Period suffered similar injury through their purchase of Edge's securities at artificially inflated prices and a presumption of reliance applies.

40.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the

sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

41.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Edge  who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act
### and Rule 10b-5 Promulgated Thereunder
### (Against the Company and the Individual Defendants)

42.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

43.     During the Class Period, the Company and the Individual Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period,

did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Edge's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, the Company and the Individual Defendants, and each of them, took the actions set forth herein.

44.    The Company and the Individual Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Edge's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  The Company and the Individual Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

45.    The Company and the Individual Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Edge's financial well-being and prospects, as specified herein.

46.    These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Edge's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Edge  and its business operations and future prospects in light of the circumstances under which they were made, not

misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

47.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

48.     The Company and the Individual Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Edge's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.    As demonstrated by the Company and the Individual Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-

being, and prospects throughout the Class Period, these defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

49.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Edge's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by the Company and the Individual Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by the Company and the Individual Defendants, but not disclosed in public statements by these defendants during the Class Period, Plaintiff and the other members of the Class acquired Edge's securities during the Class Period at artificially high prices and were damaged thereby.

50.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Edge was experiencing, which were not disclosed by the Company and the Individual Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Edge  securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

51.     By virtue of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

52.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM
### Violation of Section 20(a) of the Exchange Act
### (Against the Individual Defendants)

53.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

54.     The Individual Defendants acted as controlling persons of Edge within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

56.     As set forth above, Edge and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Federal Rules of Civil Procedure 23;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.

Dated: April 23, 2018          /s/ *James E. Cecchi*
                               James E. Cecchi
                               Donald A. Ecklund
                               5 Becker Farm Road
                               Roseland, NJ 07068

GLANCY PRONGAY & MURRAY LLP
Lionel Z. Glancy
Robert V. Prongay
Lesley F. Portnoy
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Plaintiff*